482 A.2d 474

Lawrence HARDY

v.

STATE of Maryland.

No. 9, Sept. Term, 1983.

Court of Appeals of Maryland.

Oct. 22, 1984.

Joel D. Worshtil, Landover (Hendershot, Koester, Worshtil & Malament, Landover, on brief), for appellant.

Stephanie J. Lane, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

COLE, Judge.

The issue we must decide in this case is whether an indictment charging a juvenile with attempted murder vests exclusive original jurisdiction in the Circuit Court to try the juvenile as an adult. Fundamental to our decision is a determination of the maximum penalty for the crime of attempted murder.

The facts giving rise to this issue may be summarized as follows. Lawrence Hardy, a juvenile, was indicted by a Montgomery County Grand Jury on December 10, 1981, on two counts of attempted common law murder,[1] assault with intent to rob, and related offenses. Two months later, the Grand Jury returned a second indictment charging Hardy with two counts of attempted murder in the first degree.[2] The State entered a *nolle prosequi* concerning the two counts set forth in the first indictment, leaving in their stead the two counts of attempted first degree murder.

---

1. The original indictment, Criminal No. 27414, stated:
   FIRST COUNT: *Attempt to Commit Murder*
      The Grand Jurors of the State of Maryland, for the body of Montgomery County, upon their oaths and affirmations, present that Lawrence NMN Hardy, on or about November 19, 1981, in Montgomery County, Maryland, unlawfully did attempt to commit a murder upon David Silverberg, in violation of the Common Law and against the peace, government and dignity of the State. (Attempt Committ [sic] Murder—Common Law)
   Count seven of this indictment charged the same offense with respect to another alleged victim.

2. The second indictment, Criminal No. 27853, stated:
   FIRST COUNT: *Attempted Murder—First Degree*
      The Grand Jurors of the State of Maryland, for the body of Montgomery County, upon their oaths and affirmations, present that LAWRENCE NMN HARDY, on or about November 19, 1981, in Montgomery County, Maryland, unlawfully, wilfully and of deliberately premeditated malice aforethought, did attempt to kill and murder David Silverberg, in violation of the Common Law and against the peace, government and dignity of the State. (Attempted Murder—First Degree, Common Law).
   The second count of this indictment charged the same offense with respect to another alleged victim.

The State sought to try Hardy as an adult pursuant to Md.Code (1974, 1984 Repl.Vol.), § 3–804(d)(1), Courts and Judicial Proceedings Article, which provides that a juvenile court does not have jurisdiction over "[a] child 14 years old or older alleged to have done an act which, if committed by an adult, would be a crime punishable by death or life imprisonment[.]" The State's theory was that Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 412(b) authorizes a punishment of death or life imprisonment for first degree murder, and § 644A of Article 27 provides that the punishment for attempt may not exceed the punishment for the completed crime; therefore, because the crime of attempted murder is punishable by life imprisonment, Hardy is subject to adult court jurisdiction.

Hardy moved to dismiss the indictment on the ground that the adult court lacked jurisdiction. He argued that the crime of attempted murder is identical to the crime of assault with intent to murder, which is punishable by a maximum of thirty-years imprisonment under § 12 of Article 27. Therefore, according to Hardy, the charge of attempted murder should be treated as a charge of assault with intent to murder, which does not expose a juvenile offender to adult court jurisdiction under § 3–804(d)(1) of the Courts Article because it is not punishable by death or life imprisonment. He also argued, in the alternative, that all murder is presumed to be murder in the second degree punishable by a maximum of thirty years. Thus, a charge of attempted murder is tantamount to a charge of attempted second degree murder, and does not fall within § 3–804(d)(1).

The Circuit Court agreed with Hardy's contentions and granted his motion to dismiss the indictment. The State appealed immediately to the Court of Special Appeals, which reversed and reinstated the indictment. *State v. Hardy*, 53 Md.App. 313, 452 A.2d 1299 (1982). We granted certiorari to consider the important question presented.

I

Hardy's basic contention is that a charge of attempted murder is not punishable by life imprisonment, and is therefore not within § 3–804(d)(1)'s jurisdictional grant. Our first step, therefore, is to ascertain the statutorily prescribed punishment for the crime of attempted murder. Hardy argues that this step is not as clear cut as it appears, because of the presence of the similar statutorily created crime of assault with intent to murder, which carries its own maximum penalty of thirty-years' imprisonment. Because the jurisdictional grant in § 3–804(d)(1) is predicated on the maximum sentence allowable for a given offense, we shall compare these two crimes.

Maryland has retained the common-law crime of attempt, which is generally defined as the intent to commit a crime coupled with some overt act beyond mere preparation in furtherance of the crime. *See, e.g., Lightfoot v. State*, 278 Md. 231, 360 A.2d 426 (1976); *Wiley v. State*, 237 Md. 560, 207 A.2d 478 (1965). Attempt is a common-law misdemeanor, which, prior to 1976, had no statutorily prescribed sentence limit; the sentence for attempt was solely within the discretion of the trial judge. *See Mitchell v. State*, 82 Md. 527, 34 A. 246 (1896). In 1976, however, the legislature enacted § 644A of Article 27, which limited the sentence for attempt to the maximum sentence for the completed crime.

Assault with intent to murder is a statutory aggravated assault set forth in § 12 of Article 27. The statute does not define the crime, but we have defined it as an assault upon the victim coupled with an intent to murder, which can be shown by proof that the crime would have been murder if the victim had died. *See, e.g., Taylor v. State*, 238 Md. 424, 209 A.2d 595 (1965); *Bird v. State*, 231 Md. 432, 190 A.2d 804 (1963). Common-law assault, an element of the crime, has been defined in various ways, but the essence of the crime is "an attempt by force to injure the person of another." *Yantz v. Warden*, 210 Md. 343, 351, 123 A.2d 601, 606, *cert. denied*, 352 U.S. 932, 77 S.Ct. 236, 1 L.Ed.2d

167 (1956); *see Taylor v. State,* 52 Md.App. 500, 450 A.2d 1312 (1982), *cert. denied,* 295 Md. 691 (1983).

Because the overt act necessary for an attempt is frequently an assault, the two crimes have a significant overlap. But the overlap is not complete, because an overt act can qualify as an attempt and yet not rise to the level of an assault. For example, an attempted poisoning would qualify as attempted murder, but it would not be an assault, especially if the poison did not come in contact with the victim. *See Bittle v. State,* 78 Md. 526, 28 A. 405 (1894). An aborted attempt to bomb an airplane would not be an assault, but it would be attempted murder. *See People v. Grant,* 105 Cal.App.2d 347, 233 P.2d 660 (1951). Lying in wait can be sufficient to establish attempt, but it would not constitute an assault. A person who fires a shot at an empty bed where he mistakenly believes the victim is sleeping has committed attempted murder, but not an assault. *State v. Mitchell,* 170 Mo. 633, 71 S.W. 175 (1902). If a defendant procures the services of a "feigned accomplice"— someone who pretends to go along with a criminal undertaking—the defendant's acts in furtherance of the crime may constitute attempted murder, but not assault. *See, e.g., State v. Mandel,* 78 Ariz. 226, 278 P.2d 413 (1954); *People v. Parrish,* 87 Cal.App.2d 853, 197 P.2d 804 (1948); *State v. Gay,* 4 Wash.App. 834, 486 P.2d 341 (1971).

Professor Perkins has explained the difference between attempted murder and assault with intent to murder as follows:

The so-called "assaults with intent" require special attention in connection with the law of attempt. Assault with intent to murder, assault with intent to rob, assault with intent to rape, and assault with intent to inflict great bodily injury are found quite frequently in the codes. Others are not uncommon, and sometimes a section provides a special penalty for an assault to commit any felony not otherwise provided for by statute.

No more is needed here than a bare reference to what was said above in regard to proximity. Since an attempt

to commit a battery is an assault, and since every murder includes a battery, logic suggests that every attempted murder includes an attempted battery and hence an assault. If this were true an attempt to commit murder and an assault with intent to commit murder would be merely different ways of expressing the same result. Logical as this may seem, however, it fails to give a true picture of the common law because of peculiarities in the history of its development. The law of assault crystallizing at a much earlier day than the law of criminal attempt in general, is much more literal in its requirement of "dangerous proximity to success" (actual or apparent) than is the law in regard to an attempt to commit an offense other than battery.

Apart from this, the two are almost identical unless a statute defines assault in terms of "present ability." Such a statutory provision, as mentioned above, is interpreted to require an actual present ability rather than the common-law requirement of an apparent present ability, and will apply to an aggravated assault the same as to any other. Hence an assault with intent to commit a particular crime is, in general, the same as an attempt to commit that crime except for two additional requirements,—(1) a greater degree of proximity, and (2) actual present ability to commit a battery (the latter being limited chiefly to states in which this has been added by the statutory definition of assault).

R. Perkins, *Criminal Law* 578 (2d ed. 1969) (footnote omitted).

The Model Penal Code's treatment of inchoate crimes illustrates the wide range of acts that would be sufficient to establish an attempt but would not be assaultive. Section 5.01(2) of the Code lists seven different actions as potential "substantial steps" that can qualify as attempts. These include lying in wait, enticing the victim to go to the planned site of the crime, reconnoitering, unlawful entry, possession of materials and soliciting an agent. Model Penal Code § 5.01(2) (Proposed Official Draft 1962). None

of these activities involves an assault. Also under the code, a person commits an attempt when he engages in conduct designed to aid another in the commission of a crime, even if the crime is not consummated. *Id.* § 5.01(3).

The analytical difference between attempted murder and assault with intent to murder is important here because it bears on the issue of whether the enactment of § 12 preempted the common-law crime of attempted murder. Section 12 of Article 27, first enacted in 1809, ch. 138 of the Acts of 1809, now provides in full:

*Section 12—Penalties*

Every person convicted of the crime of an assault with intent to rob, is guilty of a felony and shall be sentenced to imprisonment for not less than two years or more than ten years. Every person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 30 years. Every person convicted of the crime of an assault with intent to commit a rape in any degree or a sexual offense in the first or second degree is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 15 years.

In 1976, the Legislature enacted § 644A of Article 27, the only penalty provision dealing with common-law attempt. This statute provides:

*§ 644A—Limitation on Sentence for Attempt*

The sentence of a person who is convicted of an attempt to commit a crime may not exceed the maximum sentence for the crime attempted.

■■■ Initially, Hardy's argument is that the enactment of § 12 preempted the common-law misdemeanor of attempted murder. This contention is plainly wrong. Maryland courts adhere to the policy that statutes are not to be construed to alter the common-law by implication. *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979); *Lutz v. State,* 167 Md. 12, 172 A. 354 (1934). The

reason for this protection of common-law principles from statutory erosion is based on Article 5 of the Maryland Declaration of Rights, which guarantees to Maryland citizens the common-law of England. Thus, there is a presumption against statutory preemption of the common-law. This presumption is easily dissipated if the statute expressly overrides a common-law principle. Section 12, however, does not expressly displace the crime of common-law attempted murder, simply because the crime of assault with intent to murder is a different offense. In short, the distinction between the two crimes dispels any inference that the legislature intended to replace the common-law crime with a statutory crime.[3]

There is no legislative history pertaining to either § 12 or § 644A. The purpose of § 12, on its face, is to define certain types of assaults and to prescribe penalties for each. By providing a range of permissible sentences, § 12 limits the trial judge's sentencing discretion in both directions—he is no longer free to impose a sentence lower than the minimum nor higher than the maximum. The purpose of § 644A, on its face, is to limit the trial judge's previously unlimited discretion in sentencing for attempts; he can no longer punish an attempt more severely than the completed crime. Although both § 12 and § 644A limit punishment for certain crimes, neither indicates that any particular crime has been abolished. Thus, Hardy's preemption argument fails.

Nonetheless, Hardy's argument is that, for the purpose of adult court jurisdiction under § 3–804(d)(1) of the Courts Article, a charge of attempted murder should be treated as a charge of assault with intent to murder. Hardy argues that if the crime of attempted murder is a lesser-included offense of the crime of assault with intent to murder, then

---

**3.** Moreover, § 644A was enacted after § 12; this at least indicates that the Legislature did not intend to displace all common-law attempts, because it saw fit to prescribe a statutory limit on the sentences allowable for attempt.

it is incongruous for the lesser-included offense of attempted murder to carry a heavier penalty than the greater offense of assault with intent to murder. Hardy states this incongruity in two ways. First, he argues that as a general matter it is unfair and irrational to punish a lesser offense more severely than a greater offense. Under this rationale, Hardy maintains that the statutory thirty-year limit on the greater offense should also be applied to the lesser offense. Second, he argues that, even if this incongruity is allowed to stand, it should not be permitted in determining adult court jurisdiction under § 3–804(d)(1) because it gives the prosecutor unbridled discretion in choosing between the adult court and the juvenile court in this type of case.

The short answer to these contentions is that they are addressed to the wrong forum—the courts cannot rewrite legislation to make an otherwise valid statute more symmetrical. The long answer is that such an incongruity is not uncommon, and it provides no basis for engrafting the sentence limit for one crime onto another crime with its own limit, either as a general matter or as a matter of adult court jurisdiction under § 3–804(d)(1).

Nothing is inherently wrong with creating a greater offense with a lighter penalty than a lesser-included offense with a heavier penalty. A classic example of this is shoplifting as opposed to simple larceny. Under former § 551A of Article 27,[1] felony shoplifting was defined as removing goods or merchandise worth $100 or more from a mercantile establishment with the intent to deprive the owner of the use thereof. Felony larceny under former § 340 of Article 27 was defined judicially as the fraudulent taking and asportation of goods worth $100 or more with the intent to deprive the owner of the use thereof. *State v. Gover*, 267 Md. 602, 298 A.2d 378 (1973). Thus, larceny was a lesser-included offense of shoplifting, but the penalty for

---

**4.** Effective July 1, 1979, former § 551A of Article 27 was repealed and replaced by the new consolidated theft statute. Ch. 849 of the Acts of 1978.

larceny was a maximum of fifteen years while the maximum penalty for shoplifting was three years. *See Slye v. State,* 42 Md.App. 520, 401 A.2d 195 (1979) (for purposes of merger, larceny conviction merged into shoplifting conviction because the former was a lesser-included offense of the latter); *Saunders v. State,* 8 Md.App. 143, 258 A.2d 776 (1969) (shoplifting statute did not repeal larceny laws).

Another example is false pretenses under former § 140 of Art. 27, which was a lesser-included offense of welfare fraud, but nonetheless carried a maximum penalty of ten years while the maximum for welfare fraud was three years. *See Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978) (lesser-included offense of false pretenses merged into greater offense of welfare fraud). Yet another example is assault with intent to rob, which carries a lesser penalty than the lesser-included offense of simple assault. *See Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980).

These cases make indelibly clear that in Maryland a defendant charged with a greater offense (that carries a lighter penalty) and a lesser included offense (that carries a heavier penalty) is only subject to the maximum penalty of the greater offense upon conviction. In this case, Hardy was charged only with attempted murder, and thus no question of merger arises. Consequently, upon conviction he would be subject to the maximum penalty for that offense.

Relentlessly, Hardy persists in arguing that the incongruity between the sentencing provision for attempted murder and assault with intent to murder is inconsistent with the purpose of § 3–804(d)(1), which is to single out serious crimes for adult court treatment. The purpose is defeated, Hardy argues, because juveniles charged with attempted murder are subject to adult court jurisdiction, while those charged with the more serious crime of assault with intent to murder are not subject to adult court jurisdiction. This argument falls with its premise: an attempted murder is not always less culpable than an assault with intent to

murder.  Attempted poisonings, attempted bombings, lying in wait, and procuring the services of a feigned accomplice all involve an element of deliberate premeditation that forms the basis of the highly culpable offense of first-degree murder.  Juveniles accused of these crimes cannot always be said to be less culpable than those charged with assault with intent to murder.

Even for those attempted murders that involve assaults, it is entirely rational to allow the prosecutor to identify the more serious instances of this offense and charge them as attempted murders so as to invoke the jurisdiction of the adult court.  This type of discretion is consistent with the policy of § 3–804(d)(1), which is to expose juveniles accused of serious crimes to the adult court.  The prosecutor in this type of case, as Hardy correctly notes, has the absolute option to go either to adult court or juvenile court.  Yet, because the prosecutor has the same option in any case where multiple crimes have been committed, this type of option is not foreign to the juvenile justice system.  In any event, this discretion is tempered somewhat—the prosecutor's task in adult court is more onerous because of procedural and evidentiary matters not present at the juvenile level.

We hold, therefore, that the maximum punishment for attempted murder is not determined by the maximum punishment for assault with intent to murder.

## II

Hardy makes a second alternative argument to support his contention that the adult court does not have jurisdiction under § 3–804(d)(1).  He contends that attempted murder should be presumed to be attempted second degree murder, which is punishable by a maximum of thirty years and therefore not within § 3–804(d)(1).  In support Hardy offers two rationales: (1) that the evidentiary presumption of second degree murder is applicable here, and (2) that the common-law crime of attempted murder, unlike the crime of

murder itself, is not divided into degrees. Therefore, he contends that Maryland does not recognize degrees of attempted murder but only the basic crime of attempted common-law murder. We shall address these two theories in turn.

■ The first rationale offered by Hardy is plainly without merit. Hardy recognizes that the presumption that murder is second degree murder is evidentiary in nature. He fails, however to comprehend the significance of this proposition. This presumption merely places the burden on the prosecution to establish at the trial by proof beyond a reasonable doubt those factors that will upgrade the criminal conduct of the defendant to a level that justifies the imposition of greater punishment. What the State may in fact prove at trial is not determinative of which court has jurisdiction to try the defendant in the first instance. It is obvious to us that the legislature intended the charge, with its concomitant maximum punishment, to govern, not the verdict rendered at the trial. Clearly, applying trial presumptions to determine jurisdiction defeats this purpose. Taking this theory to its logical conclusion, a juvenile is also presumed innocent, which *a fortiori* does not subject him to the jurisdiction of the criminal court. Moreover, this Court has held that, for purposes of determining jurisdiction, the juvenile is presumed to have committed the crime charged. *In re Randolph T.*, 292 Md. 97, 437 A.2d 230 (1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

■ Hardy's second rationale, although superficially attractive, is upon closer examination likewise without merit. In essence, he argues that attempted murder, unlike murder, is not divided into degrees by statute. Based on this argument, Hardy reasons that Maryland does not recognize degrees of attempted murder, but only the basic crime of attempted common-law murder. Because this issue is one of apparent first impression in Maryland, we shall examine the historical development of common-law murder and the crime of attempt.

At common-law degrees of murder were unknown. *Jackson v. State*, 286 Md. 430, 436, 408 A.2d 711, 715 (1979); *State v. Ward*, 284 Md. 189, 195, 396 A.2d 1041, 1045 (1978); *Wood v. State*, 191 Md. 658, 666, 62 A.2d 576, 580 (1948).

At early common law, all homicide, unless justifiable, was deemed unlawful and punished by death. The severity of the punishment gradually abated as the English Rulers recognized that the circumstances giving rise to unlawful homicides were not always the same and hence called for different punishment, depending upon the presence or absence of malice in the commission of the crime.

In 1809, the General Assembly enacted a comprehensive codification of various common-law offenses. Ch. 139 of the Acts of 1809. This legislation, modeled on a 1794 Pennsylvania statute, divided the crime of murder, as known at common-law, into first and second degree murder. *See Campbell v. State*, 293 Md. 438, 441, 444 A.2d 1034, 1036 (1982). In a seminal decision interpreting this 1809 Maryland law, our predecessors stated that this law did "not create a new offense in distinguishing between murder of the first and second degrees. The design was to discriminate in awarding the punishment[,]" *Weighorst v. State*, 7 Md. 442, 451 (1855), not to define new crimes. *Davis v. State*, 39 Md. 355, 373 (1874). Thus, from *Weighorst* to the present, we have consistently maintained that the 1809 Act did not abolish the common-law concept of murder, but merely divided it into degrees for punishment purposes. *E.g., Campbell v. State, supra*, 293 Md. at 441, 444 A.2d 1034; *State v. Ward, supra*, 284 Md. at 205, 396 A.2d 1041; *Newton v. State*, 280 Md. 260, 268, 373 A.2d 262 (1977); *Gladden v. State*, 273 Md. 383, 389–90, 330 A.2d 176 (1974); *Stansbury v. State*, 218 Md. 255, 260, 146 A.2d 17 (1958); *Davis v. State, supra*, 39 Md. at 374; *Weighorst v. State, supra*, 7 Md. at 451. That one may be charged with common-law murder in lieu of the shortened statutory form prescribed in § 616 of Article 27 is well-settled. *State v. Ward, supra*, 284 Md. at 200–01, 369 A.2d 1041; *Wood v. State, supra*, 191 Md. at 667, 62 A.2d 576. Equally well-

settled is that one may be convicted of first-degree murder under an indictment charging common-law murder. Our predecessors originally noted this proposition in *Davis v. State, supra:*

> When, therefore, a person is indicted for murder, in the technical language of the common law, he is charged with a crime, which in its proper sense, includes all circumstances of aggravation, and as all minor degrees are included in the major, he is liable to be convicted of the inferior, as well as of the higher grades of that offense, and *vice versa.*

39 Md. at 374.

Based on these principles an indictment charging common-law murder is sufficient to sustain a conviction for either first or second-degree murder or manslaughter. Evidence presented at trial and the verdicts will determine the level of criminal culpability and hence the punishment for the offense. Our research has not revealed any Maryland appellate decision that has questioned the validity of these principles.[5]

█ As we see it then, the issue narrows to whether a person charged with attempted common-law murder can be convicted of attempted murder in the first-degree or attempted murder in the second degree. As previously stated, unlike other jurisdictions,[6] Maryland does not have a statute defining the crime of attempt. Rather, this Court has defined the crime of attempt as the intent to commit a crime coupled with some overt act beyond mere preparation

---

5. To the contrary, the Court of Special Appeals has on at least two occasions expressly based its decisions on these principles. *See Smith v. State,* 41 Md.App. 277, 296, 398 A.2d 426 (1979); *Johnson v. State,* 38 Md.App. 100, 109–10, 379 A.2d 436 (1977).

6. *E.g.,* Ark.Stat.Ann. § 41–701 (1977); Ga.Code Ann. § 16–4–1 (1984); N.Y.Penal Law § 110.00 (McKinney 1975); 18 Pa. Const.Stat.Ann. § 901(a) (Purdon 1983).

in furtherance of the crime. *See Lightfoot v. State, supra,* 278 Md. at 237, 360 A.2d 426; *Wiley v. State, supra,* 237 Md. at 563–64, 207 A.2d 478. The crime of attempt, in a literal sense, is an adjunct crime—it cannot exist by itself, but only in connection with another crime. Although it remains a common-law crime, *Lightfoot v. State, supra,* attempt is applicable to any existing crime, statutory or common law. *See id.* (affirming conviction for attempt to commit armed robbery with a dangerous and deadly weapon, a statutory offense); *Tillett v. Warden,* 215 Md. 596, 135 A.2d 629 (1957) (attempt to commit statutory burglary constitutes a common-law misdemeanor); *Gray v. State,* 43 Md.App. 238, 403 A.2d 853 (attempt applies to statutory sexual offenses), *cert. denied,* 286 Md. 747 (1979); *Jennings v. State,* 8 Md.App. 321, 259 A.2d 547 (1969) (recognizing offense of attempt to commit statutory offense of escape); 4 *Wharton's Criminal Law* § 741, at 567 (C. Torcia 14th ed. 1981). Nevertheless, Hardy insists that the Legislature has not created any crime of attempted murder by degrees. We agree; it did not have to do so. The crime of attempt by definition expands and contracts and is redefined commensurate with the substantive offense.[7]

If the evidence satisfies the fact finder by proof beyond a reasonable doubt that the conduct of the defendant falls within the proscribed conduct in the statute labeled as first degree murder that did not result in death of the victim,

---

7. The same is true with other degree-ranked offenses. For example, under the Maryland sexual offenses statutes (§§ 461–464E of Article 27), various offenses are graded by degree, such as first degree rape (§ 462), second degree rape (§ 463), first degree sexual offense (§ 464), second degree sexual offense (§ 464A), third degree sexual offense (§ 464B), and fourth degree sexual offense (§ 464C). Maryland courts, consistent with our decision today, have affirmed convictions for attempts to commit these offenses. *See Walker v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982) (attempted rape in the first degree); *Holt v. State,* 50 Md.App. 578, 438 A.2d 1386 (1982) (attempted third degree sexual offense); *Gray v. State, supra* (attempted rape in the second degree); *Christensen v. State,* 33 Md.App. 635, 365 A.2d 562 (1976) (attempted rape in the second degree).

then the crime of attempted murder in the first degree has been established. If the evidence of criminal culpability is something less, the crime proved may be attempted murder in the second degree or attempted voluntary manslaughter. We emphasize that the basic characteristic of an attempt is that it adjusts according to the proof established at trial.

Here, the State originally obtained an indictment charging Hardy with attempted common-law murder. Subsequently, at the State's request, the Grand Jury returned a second indictment charging Hardy with attempted first-degree murder. While we note that the first indictment was itself sufficient to secure a conviction for either attempted first-degree or second-degree murder, we cannot criticize the State for obtaining an indictment cast in the terms suggested by the statutory short form set forth in § 616 of Article 27. Because this case involved a juvenile, the State in an abundance of caution elected to obtain an indictment that would clearly place Hardy on notice that he faced adult court jurisdiction under § 3–804(d)(1) of the Courts Article where a life sentence may be imposed.

We conclude that an indictment that charges attempted common-law murder or that uses the short form as prescribed in § 616 of Article 27 and charges attempted murder in the first-degree is proper and carries with it a maximum penalty of life imprisonment and, in the case of a juvenile defendant, vests exclusive original jurisdiction in the adult court.[8]

Accordingly, for the above reasons, the judgment of the Court of Special Appeals is affirmed.

*JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED.*

*MONTGOMERY COUNTY TO PAY THE COSTS.*

---

**8.** We express no opinion as to the existence of the offense of attempted felony murder.