555 A.2d 1064

Leon C. GLENN, et ux.

v.

Jose V. MORELOS.

No. 991, Sept. Term, 1988.

Court of Special Appeals of Maryland.

April 3, 1989.

Certiorari Denied June 29, 1989.

Thomas C. Summers (Marvin Ellin and Ellin & Baker, on the brief), Baltimore, for appellants.

Michael L. Cohen (Gerald D. Freed and Wilson, Elser, Moskowitz, Edelman and Dicker, on the brief), Baltimore, for appellee.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

POLLITT, Judge.

In *Geisz v. Greater Baltimore Medical,* 313 Md. 301, 545 A.2d 658 (1988), *rev'g* 71 Md.App. 538, 526 A.2d 635 (1987), the Court of Appeals noted:

> We intimate no opinion as to the effect of § 5–203 [of the Courts and Judicial Proceedings Article, Md.Code (1974, 1984 Repl.Vol.)] on the medical malpractice statute of repose, CJ § 5–109, prior to the amendment of the latter by Ch. 592 of the Acts of 1987 to provide that

nothing in § 5–109 limits the application of, *inter alia,* § 5–203.

*Id.* 313 Md. at 325, 545 A.2d at 669, n. 9.

■ In the resolution of this appeal, we are required to determine that issue. We shall hold that, by the express mandate of the General Assembly, § 5–203 of the Courts Article did not apply to medical malpractice actions based on injuries occurring between 1 July 1975 and 1 July 1987. We therefore shall affirm the judgment of the Circuit Court for Baltimore County but for a different reason from that expressed by the trial court.

By Chapter 545 of the Acts of 1975, a new section 5–109 was added to the Courts Article "[f]or the purpose of providing the statute of limitations for actions based on malpractice by physicians." As enacted, that section read:

§ 5–109.

An action for damages for an injury arising out of the rendering of or failure to render professional services by a physician shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, whichever is the shorter. In no event shall this time run against a minor until he has attained majority.[1]

The Act further provided that it should apply only to injuries occurring after July 1, 1975.

When the General Assembly was considering the Health Care Malpractice Claims statute (Ch. 235, Acts of 1976), The Medical Malpractice Insurance Study Committee, appointed by the President of the Senate and the Speaker of the House of Delegates, and consisting of six senators, six delegates, a representative of the Governor's office and representatives from medical, legal, hospital and insurance

---

1. As originally drafted, Senate Bill 1055 (1975) provided that such actions shall be filed within *eight* years of the injury or *one* year of its discovery.

fields, recommended amendments to the 1975 Act.[2] Because the 1975 Act dealt only with actions against physicians and not those against other health care providers, and because it was felt that the provisions concerning minors placed too long a "tail" on the defendant's liability,[3] § 5–109 was amended by the 1976 Act to read:

§ 5–109.

An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, whichever is the shorter. If the claimant was under 16 years of age at the time the injury was committed, the time shall commence when he reaches the age of 16. Filing of a claim with the Health Claims Arbitration Office in accordance with § 3–2A–04 of this article shall be deemed the filing of an action for purposes of this section.

At all times relevant hereto, and indeed virtually unchanged in substance since the enactment of Ch. 357, Acts of 1868, Courts Article § 5–203 provided:

If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

Neither the 1975 nor the 1976 enactment of § 5–109 made any reference to § 5–203.

On 20 November 1986 Leon C. Glenn and Queen E. Glenn, his wife, appellants, pursuant to § 3–2A–04 of the Courts

---

**2.** Two members of that committee were then Senator John J. Bishop, Jr., and Alan M. Wilner, Esq., Chief Legislative Officer for the Governor's office, now associate judges of this Court.

**3.** *See* statement of Delegate Martin S. Becker, Chairman of the Committee, *Issue Report of the Legislative Study Group,* Vol. 2, # 1, February 18, 1976.

Article, filed with the Director of the Health Claims Arbitration office a statement of claim against Dr. Jose V. Morelos, appellee.[4] The complaint and amendments thereto alleged negligence of Dr. Morelos in the performance of a surgical procedure in the area of Mrs. Glenn's left ear on 15 May 1980, which caused a permanent and disfiguring paralysis of her face. It was further alleged that Dr. Morelos fraudulently concealed the facts from the Glenns so that they were kept in ignorance of their cause of action until August of 1986.

Dr. Morelos moved to dismiss the claim as barred by the statute of limitations. He asserted that (1) the claim was barred by § 5–109 because it was not brought within five years of the time the injury was committed and that § 5–203 was inapplicable, or (2) even if § 5–203 were applicable, the amended claim failed to allege adequately either fraud by Dr. Morelos or the exercise of ordinary diligence by the Glenns in the discovery of such fraud. The chairman of the arbitration panel ruled as a matter of law (1) that § 5–203 was applicable to § 5–109, but (2) even assuming the existence of fraud, appellants had not shown the exercise of ordinary diligence in the discovery thereof. The chairman dismissed the claim.

Pursuant to § 3–2A–06, appellants rejected the award and filed the appropriate petition to vacate the award and complaint in the circuit court. Appellee responded by a motion to dismiss or for summary judgment, asserting the same issues as those raised before the panel chairman. After a hearing, the trial court ruled (1) that fraud can, under proper circumstances, extend the five-year limitation period, but (2) that the allegations in the complaint were insufficient to generate factual issues as to "continuing fraud" on the part of Dr. Morelos or the exercise of due diligence by

---

4. The claims against two other health care providers were dismissed by the chairman of the arbitration panel and those dismissals were affirmed by the circuit court. The appeal in this case relates solely to the claim against Dr. Morelos.

the Glenns. The court granted the motion to dismiss and judgment was entered for Dr. Morelos.

■ On appeal, the Glenns raise three questions, stated as:

I. Did the Appellants plead fraud sufficiently in their Complaint to toll the Statute of Limitations in a medical malpractice case and present factual issues for determination by a jury?

II. Was the issue of due diligence by the Appellants as it related to the issue of the alleged fraud by the Appellee in tolling the Statute of Limitations, an issue of fact for decision by a jury and not a matter for the Motions Judge to rule on as a matter of law?

III. Did the Health Claims Arbitration Panel Chairman exceed his powers by ruling that the Appellants did not exercise due diligence in discovering the Appellee's fraud and by dismissing the claim?

In his "cross-appeal," Dr. Morelos asks:

I. Does Md.Cts. & Jud.Proc.Code Ann. § 5–203 (1974, 1984 Repl. Vol.) operate to toll the absolute five year statute of limitations in medical malpractice actions, under Md.Cts. & Jud.Proc.Code Ann. § 5–109 (1984 Repl. Vol.)?

Although stated by appellee as a "cross-appeal," an appeal or cross appeal is impermissible from a judgment wholly in a party's favor. *Offutt v. Montgomery Cty. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979). In that situation, however, despite a party's inability to raise adverse issues by appeal or cross appeal, if the losing party appeals, the winning party may argue as a ground for affirmance matters resolved against it at trial. *Paolino v. McCormick & Company*, 314 Md. 575, 579, 552 A.2d 868, 870 (1989). Since the judgment below was favorable to Dr. Morelos, the "cross appeal" was improper, but the issue is properly before us as an alternative ground for

affirmance of the trial court. We shall first consider that issue because, in our view, it is dispositive of this case.

In *Hill v. Fitzgerald,* 304 Md. 689, 501 A.2d 27 (1985), the Court of Appeals interpreted the 1975 enactment of § 5–109. The Court stated:

Where the provisions of the statute are clear and unambiguous, *as here,* there is no room for construction. *See Willis v. State,* 302 Md. 363, 488 A.2d 171 (1985); *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 458 A.2d 758 (1983).

While we recognize the rule that statutes are not to be construed to alter the common law by implication, *see Hardy v. State,* 301 Md. 124, 131, 482 A.2d 474 (1984), we think that the words of § 5–109 *expressly place an absolute five-year period of limitation on the filing of medical malpractice claims* calculated on the basis of when the injury was committed, *i.e.,* the date upon which the allegedly negligent act was first coupled with harm. The purpose of the statute, readily evident from its terms, was to contain the "long-tail" effect of the discovery rule in medical malpractice cases by restricting, *in absolute terms,* the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment. The statute is a response to the so-called crisis in the field of medical malpractice claims, *see Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), *and contains no room for any implied exceptions. See Walko Corp. v. Burger Chef,* 281 Md. 207, 378 A.2d 1100 (1977). Section 5–109 is couched in terms of when the injury was committed and not when the entire course of treatment is finally concluded. The provisions of § 5–109, and the intent underlying the enactment of that statute, are plainly inconsistent with the survival of the continuing treatment rule. We thus conclude that the common law rule was abrogated by the legislature when it enacted § 5–109. The three- and

five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. *And this is so without regard to whether the injury was reasonably discoverable or not.* [emphasis added]

*Id.* 304 Md. at 699–700, 501 A.2d at 32–33.

Despite this absolute and unqualified language, and relying on the aforementioned note in *Geisz* and the 1987 amendment to § 5–109, appellants argue that neither the General Assembly in Chapter 545 of 1975 nor the Court of Appeals in *Hill v. Fitzgerald* meant precisely what it said. They posit that such a result would be grossly inequitable in that a plaintiff injured before 1975 or after 1987 could toll the five-year statute by a showing of fraud and due diligence, but a plaintiff injured during that period could not.

Chapter 592, Acts of 1987, repealed and reenacted with amendments §§ 5–109, 5–201 and 5–203.[5] That Act, as enacted, now reads in pertinent part:

**Section 5–109 Actions against health care providers**

*(a) Limitations.*—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

\* \* \* \* \* \*

---

**5.** Section 5–203 was amended by substituting the words "If the knowledge of a cause of action is kept from a party" for the words "If a party is kept in ignorance of a cause of action," seemingly a difference without a distinction.

*(f) Application*—Nothing contained in this section may be construed as limiting the application of the provisions of:

(1) § 5–201 of this title that relate to a cause of action of a mental incompetent; or

(2) § 5–203 of this title.

Maryland Code (1984 Repl.Vol., 1988 Cum.Supp.), § 5–109 of the Courts and Judicial Proceedings Article.

Section 2 of Chapter 592 stated:

SECTION 2. AND BE IT FURTHER ENACTED, That this Act applies only to actions arising from events occurring on or after the effective date of this Act and may not be applied or interpreted to have any effect upon or application to any actions arising from events occurring before the effective date of this Act. However, the amendment by this Act of provisions of law in effect prior to the effective date of this Act may not be construed to preclude the application of those provisions of law to any actions arising from events occurring before the effective date of this Act.

 Appellants assert that "The 1987 amendment of Sec. 5–109, expressly allowing the effect of Sec. 5–203, was a legislative recognition of a prior common law and legislative approach to fraud and statutes of limitations. It did not open a door where one had been closed, but unequivocally stated that the door continues to exist for medical malpractice claimants." We do not read the 1987 Act as quite so unequivocal. What the Act does state, unequivocally, is that it applies only to actions arising from events occurring on or after 1 July 1987, and that it may *not* be applied or interpreted to have any effect upon or application to events occurring prior thereto. Specifically, it does not apply to this case. We think the 1987 Act by its express terms did "open a door where one had been closed." We cannot read the equivocating language which follows as an implied overruling of the positive language of *Hill v. Fitzgerald, supra.* If the Legislature felt that the Court of

Appeals in *Hill* had misconstrued the legislative intent of Chapter 545 of 1975 or Chapter 235 of 1976 it could have clearly so stated in the 1987 act.[6] When the Legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it. *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 500 A.2d 641 (1985). We may not infer that the Legislature, by implication, repudiated its express language that the 1987 Act was prospective only. As stated by this Court in *Johns Hopkins Hosp. v. Lehninger*, 48 Md.App. 549, at 562, 429 A.2d 538, at 545, *cert. denied*, 290 Md. 717 (1981):

> The Court of Appeals does not allow any implied or equitable exception to be engrafted on the statute of limitations merely on the ground that such exception would be within the spirit of the statute. *McMahan v. Dorchester Fert. Co.*, 184 Md. 155, 160, 40 A.2d 313 (1944). To the contrary, the Court looks to the public policy served by the defense of limitations, and permits it to function arbitrarily, without discrimination between

---

**6.** The Legislature was well aware of the Court's decision in *Hill* when it enacted the 1987 amendments. As originally proposed, Senate Bill 225 (1987) had as one of its purposes an overruling of the Court's definition of "injury" in *Hill*. It proposed to change the words "five years of the time the injury was committed" to "five years of the allegedly wrongful act or omission." It was concerned by the fact that

> The Court of Appeals has recently given an expansive reading to the term "injury" in § 5–109. The Court ruled in *Hill v. Fitzgerald*, 304 Md. 689 [501 A.2d 27] (1985) that an "injury" is committed on the date that the allegedly negligent act was first coupled with harm. Accordingly, it would be possible under this interpretation to bring an action for a harm that had not manifested itself for years after the negligent act. It some cases, this interpretation effectively negates the limitations period. Such unexpected expansions of risk exposure diminish predictability and pricing stability and, generally, contribute to the soaring premiums in the Maryland malpractice insurance marketplace.

*Briefing Paper*, H.B. 245/S.B. 225, prepared by Governor's Legislative office, p. 3. This suggested change was stricken from the Bill by Amendment No. 3 before the Senate Judicial Proceedings Committee. *See Summary of Committee Report* 3–26–87, signed by Senator Walter M. Baker, Chairman, Committee on Judicial Proceedings.

the just and unjust claim, or the avoidable and unavoidable delay.

 Before the creation of the "discovery rule," either by judicial fiat or, as in the case of fraudulent concealment, by statute, the general rule was that limitations began to run at the time of the injury, the effect of which was to bar the plaintiff's claim on many occasions before he could know that negligence had taken place. *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966). As a result of the "discovery rule," the number of medical malpractice plaintiffs expanded substantially. *See* Casenote, *Hill v. Fitzgerald,* 16 Balt.L.Rev. 571, 574 (1987). To eliminate insurers' inability to predict future claims, legislatures enacted medical malpractice statutes of repose, placing an *absolute* bar on the filing of a medical malpractice action after the expiration of a stated time. *Id.* at 575.

Prior to the current crisis, the tendency of the courts was to restrict application of the act or omission rule in medical malpractice cases through adoption of the exceptions.[7] Apparently, the judiciary concluded that the danger of stale claims was outweighed by the injustice which would otherwise be visited upon patients who failed to discover their injuries through no fault of their own during the time prescribed by statute. *The recent malpractice crisis, however, has caused a legislative reversal of this trend through enactment of shorter limitations periods and the imposition of absolute maximum limits on when a claim may be brought.* [emphasis added]

*An Analysis of State Legislative Responses To The Medical Malpractice Crisis,* 1975 Duke L.J. 1417, 1432. (citing, among others, Maryland Code (Supp.1975), § 5–109 of the Courts and Judicial Proceedings Article. *See also Medical Malpractice Reform: A Preliminary Analysis,* 36 Md.L.

---

**7.** One of the exceptions encompassed by the "discovery rule" is where the health care provider fraudulently conceals the existence of a cause of action.

Rev. 489, 502 (1977), where the author states "a number of states have recently enacted legislation repealing the discovery exception in whole or in part," citing § 5–109. The Court of Appeals clearly stated in *Hill* that this is precisely what the Maryland General Assembly did in 1975 and 1976. Unless and until that Court tells us something to the contrary, we must assume that it meant what it said.

■ Because the "injury" in this case occurred in 1980 and the claim was not filed with the Health Claims Arbitration office until 1986, the claim was barred by § 5–109 as it then existed and was properly dismissed. In view of this conclusion, we need not decide the issues raised by appellants.

JUDGMENT AFFIRMED; APPELLANTS TO PAY COSTS.