558 A.2d 750

**Leonard H. BURRIS, et ux.**

v.

**George J. RICHARDS, Jr., et al.**

**No. 1332, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 7, 1989.

Richard W. Winelander (Donald J. Katz, on the brief), Lutherville, for appellants.

S. Marc Land (Roy L. Mason, Angus R. Everton, Stacey E. Jackson and Montedonico & Mason, Chartered, on the brief), Baltimore, for George J. Richards, Jr.

Ronald U. Shaw (Mark A. Wesker and Miles & Stockbridge on the brief), Baltimore, for Richards, Hirschfeld & Associates, P.A. and Robert L. Hirschfeld.

Ward B. Coe, III, Harry S. Johnson, Jonathan E. Claiborne, Carol A. Zuckerman and Whiteford, Taylor & Preston, on the brief, Baltimore, for Greater Baltimore Medical Center.

Argued before MOYLAN, BISHOP, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Justice.

Leonard H. Burris and his wife, appellants, appeal from the judgment of the Circuit Court for Baltimore County granting summary judgment, on the basis of limitations, in favor of George R. Richards, M.D.; Robert L. Hirschfeld, M.D., Richards, Hirschfeld and Associates, P.A., and Greater Baltimore Medical Center. They present three questions:

1. Whether the trial court erred in granting the defendants summary judgment on the basis that the plaintiffs' claims were barred by the statute of limitations where a factual dispute regarding fraudulent concealment existed.

2. Whether the trial court erred in vacating the default judgments entered against the defendants, Robert L. Hirschfeld, M.D. and Richards, Hirschfeld and Associates, P.A.

3. Whether the trial court erred in refusing to strike the affirmative defenses of the statute of limitations and latches [sic] as to the defendants, Robert L. Hirschfeld, M.D. and Richards, Hirschfeld and Associates.

We will affirm.

Appellants filed a claim against appellees on May 11, 1984 in the Health Claims Arbitration Office. The panel chairman granted motions for summary judgment premised on the statute of limitations in favor of each of appellees and entered awards accordingly. Appellants filed a notice of rejection of the Decision, Order, Findings and Awards of Health Claims Arbitration Panel Chairman. They also timely filed a Notice of Appeal From and Action to Nullify Decision, Order, Findings and Award of Health Claims Arbitration Panel Chairman and a Complaint and Election

for Jury Trial in the Circuit Court for Baltimore County. The complaint, like the claim before the arbitration panel, contained several counts, including medical negligence, loss of consortium, lack of informed consent, negligent entrustment and fraud, misrepresentation and concealment, and fraudulent concealment.

The certification attached to the complaint acknowledges that the complaint was mailed to counsel for each appellee, as opposed to being served by process on each appellee. Appellees Richards and Greater Baltimore Medical Center filed answers denying the allegations of the complaint and setting up affirmative defenses. Appellees Hirschfeld and Richards, Hirschfeld and Associates did not, which prompted appellants to request orders of default.[1] Within 30 days of the entry of the orders of default, appellees Hirschfeld and Richards, Hirschfeld and Associates moved to vacate,[2] maintaining that "plaintiffs have never caused service of process of the complaint to be made upon these Defendants. Accordingly, since the Complaint has never been served upon these Defendants, the time for their filing a response to this action in this Court has not yet started to run." They also alleged:

> Furthermore, the Orders for Default should be vacated because these Defendants have very strong legal and factual defense to the Plaintiff's claim under the statute of limitations. Plaintiff's action is governed by the statute of limitations found in § 5-109 of the Courts & Judicial Proceedings Article. Under that Section, a claim for medical malpractice must be brought within three

---

**1.** Appellants originally moved for an order of default on November 25, 1986 and it was entered on November 26, 1986. Realizing, however, that they had failed to note the last known addresses of the appellees, appellants amended their request for order of default on December 1, 1986, which was entered on December 2, 1986.

**2.** Appellees filed two motions to vacate. The first was filed on December 2, 1986, presumably directed at the order of default entered on November 26, 1986. A second motion to vacate order of default was filed on December 24, 1986, this one responding to the order entered on December 2, 1986.

years of the date of discovery or within five years after the injury was committed, whichever is shorter. Plaintiff's claim is barred under both the three year discovery rule and the five year provision.

Following a hearing, the trial court granted appellees' motions to vacate the orders of default. Notwithstanding that appellees argued that they had not been served properly, the court made clear that it was not for that reason that it granted the motions. It explained:

> Yes, I have no problem with service. Not for that reason am I striking it out. I think it is discretionary on my part. I say this court is not in favor of motions for judgment by default and have liberally stricken them out, be it the plaintiff or defendant. That's the reason this court is exercising discretion. I do not feel from a purely technical point of view this ought to be decided on a motion for judgment by default. That's my reason for the record.

Earlier, the court had indicated that "Where [a] case obviously was litigated below and the parties certainly are not placed in a different position," the case should not be decided by way of default.[3] Appellants appealed the court's ruling on motions to vacate. Appellee did not file a cross-appeal challenging the court's determination that service was proper.

1

Appellant, Mr. Burris, during the summer of 1978, discovered that he had cancer of the prostate. He was referred to appellee Richards, who, on or about September 13, 1978, started him on a program of radiation therapy. From then

---

**3.** Once the court vacated the orders of default, appellees filed their answer which included the affirmative defenses of limitations and laches. Appellants moved to strike the defenses of limitations and laches, arguing that they were not filed on a timely basis as required by Maryland Rule 2–323. Critical to appellants' analysis is the trial court's determination that appellees were properly served. The trial court denied the motion to strike.

until the treatment ended on November 8, 1978, he received 30 radiation treatments to the prostate. Although he experienced some side effects, nausea, vomiting, a peeling and burning of the skin, urinary and bowel dysfunction, Richards assured him that they would clear up and, in some instances, they did.

In March 1979, Mr. Burris experienced a painful swelling of his left testicle. When he consulted a doctor at GMBC about it, he was told that it was the result of radiation therapy. That testicle was removed on March 14, 1979. Later in 1979, during the summer, Mr. Burris was hospitalized at St. Joseph's Hospital. At that time, he was told he was suffering from probable radiation induced epdidymitis and colitis. Mr. Burris' right testicle was removed in December 1979. At that time, he was informed by a doctor at the Wythe County Hospital in Wythe County, Virginia that "he had been burnt with radium". The doctor, upon examining his rectum, also told him, "his bowels were burnt up" like "burnt meat skin". According to Mr. Burris, it was at this time that he began to feel that Richards had not been honest with him. Mr. Burris continued to see Richards until May, 1981. As we have indicated, the medical malpractice action was filed in May of 1984.

In *Glenn v. Morelos*, 79 Md.App. 90, 555 A.2d 1064 (1989), we determined an issue left open by the Court of Appeals in *Geisz v. Greater Baltimore Medical Center*, 313 Md. 301, 325 n. 9, 545 A.2d 658 (1988), *i.e.*:

> ... the effect of [Maryland Courts & Jud.Proc.Code Ann.] § 5–203 [ (1974), 1984 Repl.Vol.] on the medical malpractice statute of respose, CJ § 5–109, prior to the amendment of the latter by Ch. 592 of the Acts of 1987 to provide that nothing in § 5–109 limits the application of, *inter alia*, § 5–203.

79 Md.App. at 91–92, 555 A.2d 1064. We held that "By the express mandate of the General Assembly, § 5–203 of the Courts Article did not apply to medical malpractice actions based on injuries occurring between 1 July 1975 and 1 July 1987." *Id.* In so doing, we expressed the opinion that the

Court of Appeals, meant precisely what it said in *Hill v. Fitzgerald*, 304 Md. 689, 501 A.2d 27 (1985):

> While we recognize the rule that statutes are not to be construed to alter the common law by implication, *see Hardy v. State*, 301 Md. 124, 131, 482 A.2d 474 (1984), we think that the words of § 5–109 expressly place an absolute five year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed, *i.e.*, the date upon which the allegedly negligent act was first coupled with harm. The purpose of the statute, readily evident from its terms, was to contain the "long-tail" effect of the discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a medical malpractice claim related to that treatment. The statute is a response to the so-called crisis in the field of medical malpractice claims, *see Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), and contains no room for any implied exceptions. *See Walko Corp. v. Burger Chef*, 281 Md. 207, 378 A.2d 1100 (1977). Section 5–109 is couched in terms of when the injury was committed and not when the entire course of treatment is finally concluded. The provision of § 5–109, and the intent underlying the enactment of that statute, are plainly inconsistent with the survival of the continuing treatment rule. We thus conclude that the common law rule was abrogated by the legislature when it enacted § 5–109. The three-and five-year statute of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five year maximum period of the statute will run its full length only in those instances where the three year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not.

*Id.* 79 Md.App. at 96–97, 555 A.2d 1064, quoting 304 Md. 689, 699–700, 501 A.2d 27 (1985). Appellants concede that

*Glenn* is dispositive of their malpractice claims. They maintain, however, that count V of their complaint remains viable inasmuch as it, far from being a "medical malpractice claim", is premised directly upon § 5–203.[4] We do not agree. First of all, it is obvious that count V is intimately connected with appellant's medical malpractice claim as evidenced by the fact that it was included in the claim filed in the Health Claims Arbitration Office and by the fact that the underlying injury to which it has reference is the appellant's medical negligence claim against appellees. Secondly and, perhaps more important, to give to count V the effect appellant argues for would be to circumvent the effect of pre–1987 § 5–109. Furthermore, it is clear that count V is "an action for damages for an injury *arising out of* the rendering of or failure to render professional services by a physician...." As such, it falls squarely within § 5–109.[5]

### 2

Maryland Rule 2–613 provides:

(a) *Order of Default.*—If the time for pleading has expired and a defendant has failed to plead as provided by

---

4. Prior to the 1987 amendment and at the time of the instant action, § 5–203 provided:
   If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

5. Section 5–109, in effect at the time of this action, provided:
   An action for damages for an injury arising out of the rendering of or failure to render the professional services by a health care provider, as defined in § 3–2A–01 of this article shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, whichever is the shortest. If the claimant was under 16 years of age at the time the injury was committed, the time shall commence when he reaches the age of 16 years. Filing of a claim with the Health Claims Arbitration Office in accordance with § 3–2A–04 of this article shall be deemed the filing of an action for purposes of this section.

these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

(b) *Notice.*—Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(c) *Motion by Defendant.*—The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(d) *Disposition of Motion.*—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

Focusing on subsections (c) and (d), appellants maintain that the trial court improperly vacated the order. Specifically, they contend that the motions to vacate either failed to set forth "both the legal and factual basis for the defense to the claim" or the basis set forth was not "a substantial and sufficient basis for an actual controversy as to the merits of the action". Appellants assert that the defense of the statute of limitations, being a technical defense, is not one on the "merits". *See Foos v. Steinberg,* 247 Md. 35, 38, 230 A.2d 79 (1967); *Snyder v. Cearfoss,* 187 Md. 635, 639, 51 A.2d 264 (1947). *See also Fritz v. Fritz,* 34 Md.App. 600, 610–611, 368 A.2d 502 (1977), in which we said "We interpret the term 'meritorious' to be one that goes to the core, heart, merits, essence, or substance of the case. Dilatory, procedural, jurisdictional, or other technical objections are not included within its ambit."

Appellees counter with their improper service argument [6] and, citing *Young v. Mayne Realty Co.*, 48 Md.App. 662, 429 A.2d 296 (1981), with the argument that the defense of limitations may, indeed, "be a meritorious defense". We need only consider the latter because whether or not the complaint was required to have been served upon the defendants individually, as opposed to their attorneys, we discern no abuse of discretion on the part of the trial court in vacating the order of default.

    ██ At the outset, we hold that the statute of limitations defense, for purposes of a motion to vacate an order of default, is a "meritorious defense", which is all that Mary-

---

**6.** As we pointed out earlier, appellees did not file a cross-appeal from the court's ruling that they had properly been served. As such, we may properly consider it only as an alternative ground for the trial court's decision. *See Glenn*, 79 Md.App. at 96, 555 A.2d 1064. Nevertheless we think it appropriate to briefly set out the thrust of the argument.

The BY Rules of the Maryland Rules of Procedure prescribe the procedure for appealing an Arbitration Panel's award. Maryland Rule BY4 provides that "[w]ithin 30 days after the filing of the notice of action [to nullify], the plaintiff shall file and serve a [complaint]" *see* Maryland Rules 2–101 and 2–302; *Ott v. Kaiser–Georgetown Health Plan*, 309 Md. 641, 645 n. 2, 526 A.2d 46 (1987). Maryland Rule BY2b requires the complaint to be served in the manner prescribed by Maryland Rule 1–321, which provides:

> (a) *Generally.*—Except as otherwise provided in these rules or by the order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address....

Appellees maintain that, when read together, these rules make clear that the complaint is an original pleading which must be served, on the defendants themselves, by process, pursuant to Maryland Rule 2–112, it may not be served upon counsel for the defendant. In support of this view, they argue that the definition of "pleading" in Rule 1–202(r) is not broad enough to cover a statement of claim filed with the Health Claims Arbitration Office. They rationalize that, because it is not a "pleading", the statement of claim certainly cannot be an "original pleading" under Rule 1–202(p) or Rule 1–321(a).

land Rule 2–613 requires. Although the phrase "substantial and sufficient basis for an actual controversy as to the merits of the action", contained in Rule 2–613(d) of the default judgment rule, has not heretofore been interpreted, that identical phrase has been interpreted in the context of the confessed judgment rule. We find that interpretation to be dispositive.

In *Young v. Mayne Realty Co.*, 48 Md.App. 662, 429 A.2d 296 (1981), the question presented was "whether a defense based upon limitations constitutes a meritorious defense under Rule 645 and could thereby serve as a ground to vacate a confessed judgment". Subsection (d) of Maryland Rule 645, at that time, provided:

> (d) *Disposition of Application.*—The motion shall be heard promptly by the court. If the evidence presented at the hearing establishes that there are *substantial and sufficient grounds for an actual controversy as to the merits of this case,* the court shall order the judgment by confession vacated, opened or modified with leave to the defendant to file a pleading and the case shall stand for trial. If the evidence does not establish that there are substantial and sufficient grounds for actual controversy as to the merits of the case, the judgment shall stand to the same extent as a judgment absolute entered after trial.[7] (Emphasis added)

The lower court determined that the defense of limitations did not constitute a meritorious defense within the meaning of Rule 645. We disagreed, holding:

> A "meritorious defense" is not necessarily a defense to the merits of the transaction from which the note arose, but it is a defense that has merit.

---

7. This rule is present Rule 2–611(d), the operative language of which is identical:

(d) *Disposition of Motion.*—If the court finds that there is a *substantial and sufficient basis for an actual controversy as to the merits of the action,* the court shall order the judgment by confession opened, modified, or vacated and permit the defendant to file a responsive pleading. (Emphasis added)

48 Md.App. at 666, 429 A.2d 296. We relied upon *Gelzer v. Scamoni*, 238 Md. 73, 207 A.2d 655 (1965), in which the Court of Appeals held that a defense of set off is a meritorious defense sufficient to permit vacation of a confessed judgment. *Id.*, 238 Md. at 74, 207 A.2d 655.

■ We have already pointed out that Rule 2–613(d) contains language identical to the operative language of Rule 2–611(d), which we think ought to be interpreted identically. Rule 2–613(d) contains an additional requirement, however,—the requirement that the court also finds it equitable to excuse the failure to plead.[8] Inasmuch as the court had "no problem with service", appellees' argument that they were never properly served could not have formed the predicate for the court's finding that it was equitable to excuse their failure to plead. The record reflects that the only other conceivable basis for such a finding is the fact that the matter had once before been determined by the arbitration panel chairman, who found the limitations defense to be meritorious. That fact could properly have been considered and the court could have determined, on that basis, that it was equitable to excuse appellees' failure to plead. Indeed, the court made that very point during the hearing on the motion. We discern, therefore, no abuse of discretion in that regard.

Appellant's argument that the defense of limitations should have been stricken upon its motion, the court having determined that service was proper, dissipates and loses all force and effect once it has been determined that the court properly exercised its discretion to vacate the order of default on that basis.

---

8. This additional requirement undoubtedly exists because, unlike the situation in the confessed judgment context, an order of default may not issue until the defendant, having been served with process, fails timely to respond. Rule 2–613(a). In the case of a confessed judgment, however, the defendant's first notice is of the entry of judgment by confession, Rule 2–611(a) and (b), which means that the defendant has no opportunity, prior to entry of the judgment, to raise any defenses or file any pleadings or papers.

**566**

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.