## UNITED STATES v. MARKOWITZ.
### No. 21139 W.

District Court, N. D. California, S. D.
Aug. 14, 1940.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for the United States.

Oscar Samuels and Teyis Jacobs, both of San Francisco, Cal., for defendant.

WELSH, District Judge.

Plaintiff, the United States, seeks recovery from the defendant Morris L. Markowitz, of the sum of $10,135.95, with in-

terest, being the 1925 deficiency income tax assessed against the New York and San Francisco Amusement Company, a corporation, hereinafter referred to as "the corporation." This claim is predicated on the assertion that the defendant, a 25% stockholder in the corporation, received assets of the corporation in an amount at least equal to that of the tax assessed against the corporation and is therefore liable for the tax under Title 26 U.S.C.A.Int.Rev. Code, Sec. 311.

Defendant contends that plaintiff has not sustained its burden of proving a transfer to the defendant of assets of the corporation owing the tax and upon which the defendant's liability is based. It appears from the evidence that during the first part of 1925, the corporation was operating the Strand Theatre in San Francisco under a lease, and that the defendant was its president and general manager; that in June, 1925, the corporation sold its leasehold interest and theatre equipment at a profit of $122,591.43, and ceased to do business. The defendant, as president of the corporation, verified its 1925 income tax return which showed no tax due. In this return, an item of deduction of $68,810.70 was claimed as having been paid out for "Salaries-Administrative". Mr. Sebastian, the Internal Revenue Agent, who examined the books of the corporation to verify the return, testified that the corporate records showed journal entries as of September 22, 1925, crediting the account of the defendant with a total of $23,300 and the account of M. M. Lesser, secretary of the corporation and its remaining 75% stockholder, with a total of $39,860 against which items there was entered on the books as of the same date charges to the account of officer's salaries; that these items carried on the books as credits to the defendant and to Lesser as officer's salaries were included in the 1925 corporate return under the deduction claimed for administrative salaries; that in the corporate balance sheet at the end of 1926, the above charges and credits for administrative salaries for 1925 were eliminated.

Defendant admits that the items totaling $23,300 credited to him as officer's salary in 1925 were not actually owing him as salary. He also admits that at a time which corresponds with the date of the above corporate entries, the cash on hand which the corporation had received from the sale of its leasehold interest was transferred out of the corporation account by checks of the corporation signed by him as president one of which, at least, was drawn in his favor and endorsed by him.

But defendant denies that he received any of the money so withdrawn; he testified that all this money was turned over to Lesser; that the check or checks in his favor were immediately endorsed to Lesser; that the purpose of this withdrawal of corporate assets in 1925 was to put the money out of the reach of one Ruby Bovo who either had or was about to recover a sizeable judgment against the corporation for personal injuries. His testimony in this respect is as follows: "The corporation I think listed a salary to me, and the reason that was distributed was because we had a suit pending for, I think, $105,000 * * * They called me at my home early one morning and stated for me to come down to the office early, which I did, to issue checks for the purpose of drawing this money out of the bank so they wouldn't be able to reach it and deposit it back to the company's funds. Mr. Lesser handled that. The check was drawn and I simply signed it and endorsed it and it was left in the firm for the purpose of paying bills and also to keep other parties from attaching that money or getting that money."

The evidence is sufficient to establish a distribution of corporate assets in 1925 whereby there was transferred to the defendant the amount credited to him on the books of the corporation as officer's salary. Whether this distribution was made under the guise of a salary payment in order to defraud creditors, or to evade the payment of income tax is of no importance in this case. And in the opinion of this court, defendant's uncorroborated testimony purporting to explain away the effect of his sworn signature to the 1925 income tax return, the corporate records, the withdrawal of corporate assets, and the issuance of corporate checks in his favor, is not entitled to any weight in view of other phases of his testimony which strikes the court as inherently incredible, and other circumstances in evidence.

Defendant is an experienced business man. He was a 25% owner of the stock of the corporation which, in the latter part of 1925, by reason of the sale of its assets, was possessed of a large sum of cash. He claims that in 1925 he permitted this cash to be turned over to Lesser who held the remaining 75% of the corporate stock, and

from that time to the present, has never demanded his share and does not know what part of this cash is coming to him although, according to his testimony, his bookkeeper, Mr. Slater, who examined the accounts, told him: "There was quite a bit of money due me."

The defendant claims that the money was to be held by Lesser for the purpose, among others, of settling on terms satisfactory to the corporation, the judgment which had been rendered against the corporation in the action brought by Ruby Bovo for her injuries. He testified that Lesser told him the judgment had been settled, but he states he does not know the amount of the settlement, a fact which would have an important bearing on the question of how much was coming to him and yet one which he apparently never considered worthy of inquiring into.

It is inconceivable that a man of defendant's business experience would handle his financial affairs in such fashion. His testimony in the foregoing particulars and its general character throughout compels the court to disregard it in its entirety and to find that plaintiff has sustained its burden of proving the transfer of corporate assets in 1925 to the defendant in the sum of $23,300.

The remaining issue is whether the plaintiff has brought itself within the period of limitations prescribed for this action.

On January 12, 1931, and prior to the expiration of the statutory period of limitations for the commencement of this action, the defendant signed a "Tax Collection Waiver" in which he agreed that the amount of the assessment taxed against him may be collected "by distraint or by a proceeding in court begun at any time prior to December 31, 1938". This document was also signed by the Commissioner. On August 4, 1936, defendant made an offer in compromise in which he expressly waived "the benefit of any statute of limitations applicable to the assessment and/or collection of liability sought to be compromised", and agreed further "to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter." When the offer in compromise was made, plaintiff still had two years, four months and 27 days within which to bring this suit under the terms of the "Tax Collection Waiver" executed by the defendant on January 12, 1931. (August 4, 1936 to December 31, 1938.) By the terms of the offer in compromise the running of this unexpired portion of the statutory period of limitations as extended by the "Tax Collection Waiver" was suspended until one year after the termination of the pendency of the offer in compromise. The pendency of the offer in compromise was terminated by its rejection on March 30, 1937. And one year later, March 30, 1938, the unexpired portion of the period of limitation as extended by the "Tax Collection Waiver", the running of which was suspended by the offer in compromise made August 4, 1936, started to run again. This action was commenced on February 14, 1939, well within the period which, on March 30, 1938, still remained for the commencement of an action to recover this tax assessment.

Defendant's contention is that his stipulation in the offer in compromise agreeing to the suspension of the running of the statutory period of limitations must be construed as an agreement for the suspension of the expiration date of the period of limitations only. And that he only agreed that the period of limitations which, in the absence of such agreement would expire on December 31, 1938, under his Tax Collection Waiver, should not expire in any event until one year after the termination of the pendency of his offer in compromise; that since the expiration date of the period of limitations as agreed upon in his "Tax Collection Waiver" was later than one year after the termination of the pendency of his offer in compromise, the later date governed and this action was barred on December 31, 1938.

If the term "suspension of the running of the statutory period of limitations" were synonymous with the term "suspension of the expiration date of the statutory period of limitations", there would be merit to defendant's contention that this action was barred on December 31, 1938. But the running of a period of time is not generally understood to refer to the expiration point of that period. In Bouvier's Law Dictionary, Rawle's 3d Revision, Vol. 2, the term "running of the statute of limitations" is defined as, "a metaphorical expression, by which is meant that the time mentioned in the Statute of Limitations is considered as passing."

Applying defendant's interpretation to the expression, it would mean that the time mentioned in the statute of limita-

tions is considered as having passed rather than as passing, or as having run rather than as running. With such interpretation this court cannot agree. When the running of the statutory period of limitations is suspended, the limitation period is arrested; it is prevented from running any further during the time of the suspension, and when the time of suspension is over, the statutory period of limitations commences to run again.

In Section 277(b) of the Internal Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Code § 277, there is contained a provision that "the running of the statute of limitations * * * on the making of assessments * * * in respect of any deficiency, shall * * * be suspended for the period during which the Commissioner is prohibited from making the assessment * * * and for sixty days thereafter." In interpreting the effect of this provision, the court, in the case of Olds & Whipple v. United States, Ct.Cl., 22 F.Supp. 809, at page 819, stated: "'Suspended' was here used in its common and general usage, meaning held in abeyance, temporarily inoperative, arrested, interrupted, stopped for a time. And we think it is clear that Congress intended by the language used that the limitation period specified in the statutes should simply be held in abeyance and should not run during the specified period and that at the end of such period the statute should again commence to run. The 60 days after the decision of the Board becomes final is simply a part of the suspended period and the Commissioner is entitled, in making the assessment of a deficiency determined by the Board, to use the 60-day period together with any unexpired portion of the statute of limitation remaining at the time it became suspended by the mailing of the deficiency notice."

The decision in the case of United States v. Havner, 8 Cir., 101 F.2d 161, 162, supports the conclusion reached herein with respect to the meaning and effect of an agreement by a taxpayer to the "suspension of the running of the statutory period of limitations" for any specified period.

There is no evidence in this case of any intent or understanding on defendant's part that the phrase, as it was used in his offer of compromise, was to be used in any sense different from that usually accorded it.

Defendant claims that the statutory period of limitations for the commencement of this action is, as to him a transferee of the taxpayer, no more than six years after the assessment of the tax; and this six-year period having already expired when the waiver of August 4, 1936, was executed, there was no unexpired portion of the statute of limitations to run when the suspension periods provided for by the waivers had terminated in December 31, 1938. The applicable statute of limitations provides that this action may be brought either (1) within six years after the assessment of the tax, or (2) within the period for collection agreed on in writing by the Commissioner and the taxpayer before the expiration of such six-year period or by subsequent written agreements made before the expiration of the period previously agreed upon, 26 U.S.C.A.Int.Rev. Code, § 276(c). The statutory period of limitations, therefore, as referred to in defendant's offer in compromise, must be construed to apply to the basic six-year period as extended by agreement pursuant to the limitation statute, unless it can be said that Subdivision (2) of Section 276(c), supra, is applicable only to a taxpayer and not to the transferee of the assets of a taxpayer. There is no reasonable basis to assume that Congress, in using the word "Taxpayer", intended to exclude the transferee of the assets of a taxpayer and liable for the tax as such, from the provisions of a portion of the statute, thereby creating a shorter statutory period for the commencement of an action for the tax against him than is provided for the commencement of the action against the taxpayer himself. Section 311 of the Internal Revenue Code provides that the liability of a transferee shall "be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title [chapter] * * *." It is clear from the provisions of the two sections 276(c) and 311 of the Internal Revenue Code read together that Congress intended the word "taxpayer" in the limitation statute to apply to the original taxpayer or to his transferee.

Defendant makes the point that since the Commissioner did not sign the offer in compromise of August 4, 1936, the waiver contained therein is not binding on the defendant. This point is well settled by the decisions of this circuit contrary to defendant's contention.

It is the order of this court that plaintiff take judgment for the amount prayed for

in the complaint together with interest and costs.

Let findings of fact and conclusions of law be prepared accordingly.